Carly M. Roman (SBN 349895)
Andrew Gunem (SBN 354042)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Counsel for Plaintiff and Putative Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SYNERGY BUSINESS SOLUTIONS DE, LLC,<br><br>Defendant. | Case No. '25CV3267 JLS JLB<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Asher Bronstin ("Plaintiff") individually and on behalf of others similarly situated, alleges the following against Defendant Synergy Business Solutions DE, LLC ("Synergy" or "Defendant").

## Nature of the Action

1. Telemarketing calls are intrusive. "A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from

telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…[P]rivate suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer,* 925 F.3d at 649-50.

3. Synergy made calls to residential telephone numbers, like Plaintiff's, that were listed on the National Do Not Call Registry.

4. Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendant violated the TCPA by placing unsolicited calls to residential numbers on the National Do Not Call Registry, as well as initiating calls and text messages during the restricted hours of before 8 a.m. or after 9 p.m. local time.

## Parties

5. Plaintiff is an individual and natural person.

6. Defendant Synergy Business Solutions DE, LLC, is a company headquartered in Miami, Florida.

## Jurisdiction & Venue

7. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

8. This Court has general personal jurisdiction over Defendant Synergy Business Solutions, LLC, because it regularly conducts business in this District, including making telemarketing calls into this District and soliciting business from this District.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. The TCPA prohibits telemarketing calls to residential subscribers before 8 a.m. or after 9 p.m., local time, and to residential subscribers whose phone numbers are registered on the National Do Not Call Registry, without prior express invitation or permission, and makes such claims actionable after more than one call in a 12-month period. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## **Factual Allegations**

15. Plaintiff is, and at all times mentioned herein was a "person" as the term is defined by 47 U.S.C. § 153(39).

16. Plaintiff's residential cellular telephone number is (760) XXX-XXXX.

17. Plaintiff uses his cellular telephone number for personal, residential, and household purposes. Plaintiff's cellular telephone number is not associated with a business, nor does Plaintiff use the number for business purposes.

18. Plaintiff's cellular telephone number has been on the National DNC since November 8, 2004.

19. Plaintiff is not a customer of Defendant.

20. At no point has Plaintiff sought out or solicited information regarding Defendant's products or services.

21. Despite this, the Plaintiff has repeatedly received calls and text messages from Defendant between February 2025 and August 2025.

22. The calls and texts were initiated for purposes of marketing Defendant's financial products.

23. On February 6, 2025, at 11:04 a.m., Plaintiff received a missed call from Defendant at (209) 243-8507.

24. To discern the identity of the caller, Plaintiff called (209) 243-8507 back on February 7, 2025, at 2:10 p.m., from his cellular telephone number. "Matthew" answered and identified himself as a representative of Synergy.

25. "Matthew" from Synergy called Plaintiff a second time on February 7, 2025, but this time from (929) 454-2910.

26. Matthew also sent Plaintiff an email on February 7, 2025, a screenshot of which is included below:

---- On Fri, 07 Feb 2025 14:14:47 -0800 **Matt L** <matt@sbsfunds.com> wrote ---

Hello Asher,

Pleasure speaking today. As discussed I will review your file for a max approval amount. Hopefully I can get close to that million dollar figure for you!

Please reply with your last 4 months of business bank statements. I will confirm with you once I receive everything.

Please let me know if you have any questions!

1/2

PM Re: SBSFunds Requesting Last 4 Months of Business Bank Statements

**Thank you,**

**Matthew**
**Senior Underwriter**
**Synergy Business Solutions**

**Office: 786-364-3148**
**Direct: 929-454-2910**
**Fax: 888-990-0322**
**Email: matt@sbsfunds.com**
**Website: www.sbsfunds.com**

27. Because Plaintiff continued to receive telephone solicitations from Synergy, he sent an email to Synergy on May 23, 2025, instructing Synergy to stop calling him.

28. But the solicitations continued. Plaintiff received additional calls and texts from Synergy in July and August.

29. Starting on July 1, 2025, Plaintiff received a call from "Henny Turner" at (350) 223-0756, who identified himself as a representative of Synergy. "Henny Turner" also texted Plaintiff on July 1, 2025, at 11:39 a.m. from (305) 525-3983.

30. The following day, on July 2, 2025, Plaintiff received two missed calls from Defendant at (305) 525-3983 before 8:00 a.m. The first call was at **7:57 a.m**. from (305) 525-3983 and the second call was at **7:58 a.m.**

31. Then, at 8:00 a.m. on July 2, 2025, directly following the early phone calls, Defendant texted Plaintiff from (305) 525-3983, stating:

> "*Hey Asher [sunshine emoji] I know you were expecting the call [monkey covering eyes emoji] allow me to properly introduce myself. My name is Henny and I represent Synergy (we're a private fund on the East Coast) because of my connection to the fund I'm able to offer business owners like yourself realistic numbers with better payback terms. when will I be able to receive the business statements so i can start putting numbers for you?*"

32. Plaintiff received two calls from Defendant on July 7, 2025, and another call from Defendant on July 9, 2025, from the same number (305) 525-3983.

33. On July 28, 2025, Defendant texted Plaintiff from (305) 525-3983 "Henny from Synergy." Plaintiff replied "STOP" and Defendant "liked" Plaintiff's reply message.

34. Nevertheless, Defendant called Plaintiff again on August 8, 2025, from the same number (305) 525-3983. The caller was "Henny Turner." Despite Plaintiff's prior requests that Defendant cease all communications—including a cease-and-desist email, verbal instructions, and texting "STOP" in response to earlier solicitations—Plaintiff was once again forced to instruct Defendant to stop contacting him.

35. On the same day, August 8, 2025 and following the aforementioned call, Plaintiff received a text message from Defendant from the same number, (305) 525-3983, stating only "Hi."

36. Under the TCPA, and as recognized by the Supreme Court, text messages qualify as "calls." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156-57 (2016).

37. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## Class Action Statement

38. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

39. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant encouraging the purchase Synergy's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Early/Late Calls Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or a third-party acting on behalf of Defendant) called, (2) within any 12-month period, (3) promoting Synergy's goods or services, (4) before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location).

40. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

41. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

42. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiff.

43. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before placing the calls and text messages at issue;

b. Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

c. whether Defendant placed calls in violation of the TCPA's calling hour restrictions, to Plaintiff and members of the Early/Late Calls Class;

d. The number of telemarketing calls and text messages Defendant sent to consumers' cell phones or pagers;

e. Whether Defendant should be held liable for violations committed on its behalf, if any; and

f. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

44. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

45. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c))**
**(On Behalf of Plaintiff and the National Do Not Call Class)**

46. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

47. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

48. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation text messages and/or telemarketing text messages to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

49. These violations were willful or knowing.

50. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

51. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
## Violation of the Telephone Consumer Protection Act
## (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c))
## (On Behalf of Plaintiff and the Early/Late Call Class)

52. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

53. It is a violation of the TCPA to initiate any telephone solicitation before 8:00 AM or after 9:00 PM, local time at the called party's location, as the Defendant did for some of the calls received by Plaintiff. 47 C.F.R. § 64.1200(c)(1).

54. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by make such calls outside the permitted hours.

55. These violations were willful or knowing.

56. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's calling hour restrictions, Plaintiff and members of the Early/Late Calls Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

57. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the National DNC Class as alleged herein;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned as counsel for the Class;

D. Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227;

E. Injunctive relief for Plaintiff and members of the Class, as described herein;

F. Attorneys' fees and costs, as permitted by law; and

G. Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

*[Counsel signature block to follow on next page.]*

DATED this 24th day of November, 2025.

Respectfully submitted

*<u>/s/ Carly M. Roman</u>*
Carly M. Roman (SBN 349895)
Andrew Gunem (SBN 354042)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com
agunem@straussborrelli.com

*Attorneys for Plaintiff*